**Opinion filed November 5, 2009**



In The

# Eleventh Court of Appeals

———————

## No. 11-08-00230-CV

———————

## DIANE GARRETT, AS NEXT FRIEND OF
## CHEYENNE GARRETT, Appellant

### V.

## PATTERSON-UTI DRILLING COMPANY, L.P. AND
## RICKY WHITE, Appellees

**On Appeal from the 132nd District Court**

**Scurry County, Texas**

**Trial Court Cause No. 23051**

### O P I N I O N

This is a wrongful death claim arising out of an on-the-job injury. Diane Garrett, as next friend of Cheyenne Garrett, filed suit against Patterson-UTI Drilling Company, L.P. and Ricky White in Lubbock County. The defendants challenged venue, and the trial court transferred the suit to Scurry County. The Scurry County District Court granted Patterson's and White's motions for summary judgment. We affirm.

## I. *Background Facts*

Brandon Garrett was employed by Patterson and was assigned to a rig drilling a well in Floyd County. White was his tool pusher. A jet became plugged, and while trying to clear it by shaking the pipe string, the brake cammed over. White was able to break the brake back over, but the brake handle was bent in the process. The rig crew had previously removed a guard to inspect the brakes. White and another employee, Randy Greene, worked on the brake handle. White directed Brandon and two other employees to replace the brake guard. The brake handle fell on the accelerator, which released the clutch, and the spool began to move. Brandon was caught in the lines and spool and was fatally injured.

## II. *Issues*

Garrett advances three issues on appeal. First, Garrett contends that the trial court erred by granting Patterson's and White's motions to transfer venue; second, that the trial court erred by granting Patterson's summary judgment motion; and third, that the trial court erred by granting White's motion for summary judgment.

## III. *Discussion*

The crux of the venue dispute is whether a wrongful death claimant can assert a gross negligence claim against the decedent's co-employee when the employer has workers' compensation insurance. There is no dispute that White is a resident of Lubbock County. If Garrett can assert a claim against him, venue is proper in Lubbock County. If not, then there was no basis to maintain venue in Lubbock County, and the Lubbock County District Court did not err by granting the motions to transfer venue. Patterson and White argue that the exclusivity provisions of the Workers' Compensation Act[1] preclude such a claim. Garrett disputes this argument but, alternatively, argues that, if Patterson and White are correct, then the Act is unconstitutional.

### A. *Is Venue Properly Before Us?*

Garrett also contends that procedural bars preclude our consideration of the substantive venue issues, contending that venue was improperly challenged because Patterson and White did not dispute that White was a resident of Lubbock County and that venue was improperly determined

---

[1]TEX. LAB. CODE ANN. §§ 401.001-419.007 (Vernon 2006 & Supp. 2009).

because she was required to prove a cause of action. We disagree with Garrett's premise that Patterson and White were required to dispute that White was a resident of Lubbock County to challenge venue. If Garrett could not assert a claim against him, then his residence is immaterial. *See In re Valetutto*, 976 S.W.2d 893, 896 (Tex. App.—Austin 1998, no pet.) (trial court did not err by transferring venue when plaintiff lacked standing to assert the only cause of action supporting venue in Travis County). We also disagree that Garrett was forced to prove a cause of action. For purposes of this review, we do not determine whether Garrett could prove a claim against White but merely whether she could plead one – a question of law that does not require the consideration of evidence and, therefore, does not require Garrett to prove a cause of action. *See id.* at 894 (plaintiff was not required to prove the merits of its cause of action because the trial court determined venue by resolving a question of law).

Garrett also contends that Patterson and White were required to first challenge her pleadings with a special exception. Again we disagree. Patterson and White were not challenging a defect, omission, obscurity, duplicity, generality, or other insufficiency in Garrett's allegations – the matters described by TEX. R. CIV. P. 91. Instead, they were challenging her alleged cause of action. But even if we are incorrect, Garrett has shown no harm because she has not identified how she could have amended her pleadings to state a viable claim against White. We note also that this suit had been pending for over ten months before the Lubbock County District Court transferred venue and that Garrett made no attempt to amend her petition.

*B. Does Garrett Have a Constitutionally Protected Cause of Action Against White?*

Garrett contends that the Texas Constitution assures her right to assert a claim for punitive damages against White because it provides:

> Every person, corporation, or company, that may commit a homicide, through wilful act, or omission, or gross neglect, shall be responsible, in exemplary damages, to the surviving husband, widow, heirs of his or her body, or such of them as there may be, without regard to any criminal proceeding that may or may not be had in relation to the homicide.

TEX. CONST. art. XVI, § 26. Garrett does not contend that this provision creates a private cause of action but that it renders the exclusivity provision of the Workers' Compensation Act

3

unconstitutional if it precludes her claim against White.[2] Garrett recognizes that the Act allows a claim against an employer but contends that White individually is also liable and that, in light of the mandatory language of Section 26, the Act cannot constitutionally preclude a gross negligence cause of action against him.

When determining the constitutionality of a statute, we begin with a presumption that it is constitutional. *HL Farm Corp. v. Self*, 877 S.W.2d 288, 290 (Tex. 1994); *Spring Branch Indep. Sch. Dist. v. Stamos*, 695 S.W.2d 556, 558 (Tex. 1985). Courts presume that the legislature "understands and correctly appreciates the needs of its own people, that its laws are directed to problems made manifest by experience, and that its discriminations are based upon adequate grounds." *Smith v. Davis*, 426 S.W.2d 827, 831 (Tex. 1968) (quoting *Tex. Nat'l Guard Armory Bd. v. McCraw*, 126 S.W.2d 627, 634 (Tex. 1939)). The wisdom or expediency of a law is for the legislature to determine, not this court. *Smith*, 426 S.W.2d at 831. Furthermore, the party challenging the constitutionality of a statute bears the burden of demonstrating that the enactment fails to meet constitutional requirements. *Stamos*, 695 S.W.2d at 558.

In construing a state constitutional provision, "the fundamental guiding rule is to give effect to the intent of the makers and adopters of the provision in question." *Harris County Hosp. Dist. v. Tomball Reg'l Hosp.*, 283 S.W.3d 838, 842 (Tex. 2009). And, because any such provision is "construed in the light of the conditions existing at the time of adoption," its meaning "is fixed when it is adopted, and it is not different at any subsequent time." *Cramer v. Sheppard*, 167 S.W.2d 147, 154 (Tex. 1942) (orig. proceeding). As Justice Holmes has written, to understand a constitutional provision, "a page of history is worth a volume of logic." *New York Trust Co. v. Eisner*, 256 U.S. 345, 349 (1921).

History makes clear that Section 26 was adopted to resolve ambiguities existing in the statutory and common law of punitive damages. *Travelers Indem. Co. of Ill. v. Fuller*, 892 S.W.2d

---

[2]Section 408.001 provides in part:

> (a) Recovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance coverage or a legal beneficiary against the employer or an agent or employee of the employer for the death of or a work-related injury sustained by the employee.

> (b) This section does not prohibit the recovery of exemplary damages by the surviving spouse or heirs of the body of a deceased employee whose death was caused by an intentional act or omission of the employer or by the employer's gross negligence.

848, 850 (Tex. 1995). When wrongful death statutes were first adopted, the question arose: Did the statute create a new cause of action in the heirs of the deceased or did it simply transmit the decedent's right to sue? *Id.* at 851. Shortly after Section 26 was adopted, Texas Courts held that it was the latter, finding that Section 26 did not grant a punitive recovery independent of a recognized claim for compensatory relief. *Id.* (citing *Ritz v. City of Austin*, 20 S.W. 1029 (Tex. Civ. App. 1892, writ ref'd)). Consequently, Section 26 does not abrogate the common-law requirement of actual damages or extend a right to seek punitive damages to those with no cause of action under the Wrongful Death Act.[3] *Id.* at 852.

Because Section 26 does not mandate any broader recovery than the decedent could have obtained had he survived, numerous limitations on the heirs' ability to pursue a punitive damage claim have been upheld. For example, courts have limited or barred wrongful death actions because of contracts executed by the decedent. *See In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 644 (Tex. 2009); *see also Ross v. Union Carbide Corp.*, No. 14-07-00860-CV, 2009 WL 2589394, at *5 (Tex. App.—Houston [14th Dist.] 2009, n.p.h.) (decedent's release barred survivor's subsequent claim under Section 26 for punitive damages).

Garrett distinguishes *Fuller* by arguing that Patterson's position rests upon the proposition that Brandon had no claim for actual damages against White due to the Workers' Compensation Act and that this proposition reads too much into *Fuller*'s holding. We do not reach this result by simply finding that Brandon could not pursue a claim for actual damages against White but because he waived the right to assert *any* claim against White. *See Dickson v. Silva*, 880 S.W.2d 785, 788 (Tex. App.—Houston [1st Dist.] 1993, writ denied). Waiver attaches because Brandon's decision to accept coverage is an election of remedies. *See Berry v. Gregg Indus. Servs., Inc.*, 907 S.W.2d 4, 6 (Tex. App.—Tyler 1994, writ denied) (employee who claims or accepts workers' compensation benefits has made an election of remedies and cannot pursue an intentional tort claim against his employer or a co-employee).

Even constitutional rights can be contractually waived. *See, e.g., In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 129-33 (Tex. 2004) (contractual jury waivers do not violate public policy).

---

[3]Tex. Civ. Prac. & Rem. Code Ann. §§ 71.001-.052 (Vernon 2008).

Because Brandon waived his right to assert a claim against White had he survived, his heirs have no claim against White for punitive damages – notwithstanding Section 26. Garrett did not plead a viable cause of action against White. The trial court, therefore, did not err by granting Patterson's and White's motions to transfer venue. Issue One is overruled.

### C. Patterson's No-Evidence Motion for Summary Judgment.

Garrett next argues that the trial court erred by granting Patterson's no-evidence motion for summary judgment. No-evidence motions are reviewed under the same standard as a directed verdict. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750-51 (Tex. 2003). Accordingly, we review the evidence in the light most favorable to the nonmovant and disregard all contrary evidence and inferences. *Id*. A trial court must grant a proper no-evidence motion for summary judgment unless the nonmovant produces more than a scintilla of probative evidence to raise a genuine issue of material fact on the challenged element of the claim. TEX. R. CIV. P. 166a(i).

Patterson filed a no-evidence motion and contended that there was no evidence that it was grossly negligent. Patterson attached deposition testimony to its motion. Garrett correctly notes that we may not consider this evidence unless it creates a fact issue. *See Binur v. Jacobo*, 135 S.W.3d 646, 651 (Tex. 2004). We do, however, consider the evidence tendered by Garrett, which included complete copies of White, Greene, and Stroud's depositions and a certified copy of OSHA's report.

Gross negligence consists of both an objective element and a subjective element. *See Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 785 (Tex. 2001). To establish gross negligence, a plaintiff must prove by clear and convincing evidence (1) that, when viewed objectively, the defendant's acts or omissions involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others and (2) that the defendant had an actual, subjective awareness of the risk involved but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others. TEX. CIV. PRAC. & REM. CODE ANN. § 41.001(11) (Vernon 2008).

Objectively, Patterson's conduct must involve an extreme risk of harm, a significantly higher threshold than the objective reasonable person test for negligence. *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 22 (Tex. 1994). Viewed objectively from the actor's standpoint, the act or omission complained of must depart from the ordinary standard of care to such an extent that it creates an extreme degree of risk of harming others. *Lee Lewis Constr.*, 70 S.W.3d at 784-86; *Universal Servs.*

*Co. v. Ung*, 904 S.W.2d 638, 641 (Tex. 1995); *Moriel*, 879 S.W.2d at 21-22. Extreme risk is a function of both the magnitude and the probability of the anticipated injury to the plaintiff. *Moriel*, 879 S.W.2d at 22. Extreme risk is not a remote possibility of injury or even a high probability of minor harm but, rather, the likelihood of serious injury to the plaintiff. *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 921 (Tex. 1998). The risk must be examined prospectively from the perspective of the actor, not in hindsight. *Moriel*, 879 S.W.2d at 23. "An act or omission that is merely thoughtless, careless, or not inordinately risky cannot be grossly negligent." *Id*. at 22.

Garrett argues that White was aware of the extreme danger of an employee being around the drum while he attempted to repair the brake. Garrett makes this point by highlighting White's testimony that he repeatedly told the rig hands to stay away from the drum and that, on one occasion, he pushed one of the rig hands away. Garrett also argues that White consciously ignored two safety procedures. First, White did not utilize a lockout/tagout procedure. Second, White did not hang the blocks.

Lockout/tagout procedures are utilized to disable machines or equipment to prevent unexpected energization, start-up, or release of stored energy in order to prevent injury. *See* 29 C.F.R. § 1910.147(a)(3). White testified that they could not utilize a lockout/tagout procedure while they were working on the equipment because they needed to keep the rig's motors running to hold up the suspended weight of the string. The driller, Donnie Lee Stroud, confirmed that it was necessary to keep the motors running. Garrett replies by pointing to an OSHA citation Patterson received for failure to follow lockout procedures. Patterson responds that an OSHA citation is no evidence of negligence and that we may not consider it. We need not resolve this question because the record establishes that Patterson and OSHA entered into a settlement agreement and that OSHA withdrew its allegation. Because Garrett presented no evidence that White could have utilized a lockout/tagout procedure, his failure to do so is no evidence of gross negligence.

White also denied that he could have hung the blocks. He testified that, while they were working on the brake handle, it would have been impossible to hang the blocks because they could not operate the rig until it was repaired. Stroud did not know if it would have been possible to hang the blocks but testified that it would have been more dangerous to do so because, with the brake handle bent, they were unable to control the string weight. Greene testified that it would have taken

7

30-45 minutes to hang the blocks and that White told him that doing so would have prevented the accident, but Greene did not testify that the blocks could have been hung before the brake handle was repaired.[4]

Garrett failed to offer evidence that the blocks could have been mechanically or safely hung. But if we assume Greene's testimony that it would have taken 30-45 minutes to hang them or that White's statement that this would have prevented the accident is some evidence that White's decision not to hang the blocks created an extreme risk of harm, then we must determine whether Garrett produced evidence that White was subjectively aware of the risk but proceeded with conscious indifference. Unquestionably, White could have waited until after the brake handle was repaired before replacing the drum cover. White was aware of the risk of being around the drum; was aware that the motors were on and that the blocks were not hung; and knew that, while he and Greene were repairing the brake handle, he could not see the drum. If White had waited to replace the cover, Brandon would not have been standing near the drum when the brake handle was dropped. Thus, Garrett produced evidence that White was aware of the risk.

White, however, took steps to minimize the risk. Before starting the repair, White held a safety meeting. The crew discussed not standing next to the drum. Brandon was personally warned several times to stay away from the drum. The employees responsible for replacing the cover were all warned to stay off the drum. White did not rush them but told them to take their time and to be safe. Garrett produced no evidence that White proceeded with conscious indifference to Brandon's safety or welfare. White's decision to replace the guard while he and Greene worked on the brake handle is evidence of negligence. But if Brandon had followed White's instructions and stayed off the drum, this accident would have been prevented. *Cf. Diamond Shamrock Ref. Co., L.P. v. Hall*, 168 S.W.3d 164, 173 (Tex. 2005) ("[W]hat separates ordinary negligence from gross negligence is the defendant's state of mind; in other words, the plaintiff must show that the defendant knew about the peril, but his acts or omissions demonstrate that he did not care."). The trial court did not err by granting Patterson's summary judgment motion. Garrett's second issue is overruled.

---

[4]White did not recall making this statement. For purposes of our review, we assume that he did.

*D. White's Traditional Motion for Summary Judgment.*

White filed a traditional motion for summary judgment contending that Garrett's claim against him was barred by the exclusivity provision of the Workers' Compensation Act. We have previously held that Garrett had no viable cause of action against White. Garrett's third issue is overruled.

## IV. *Holding*

The judgment of the trial court is affirmed.

RICK STRANGE

JUSTICE

November 5, 2009

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.

9