**AFFIRM; and Opinion Filed May 14, 2019.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-19-00061-CV

**YAKELYN RUBIO GALINDO, TRAVIS YOUNG, SAUL PEREA, RICHARD ACEBO, EMILY FORD, DAVID HASHEMI SEDDIGHZADEH, ANGELA BENTON, ALYSSA MOEBUS, PAPPAS RESTAURANTS, INC., PHCG INVESTMENTS, AND CHARLES BRAY, Appellants**

**V.**

**NORMAN GARNER, INDIVIDUALLY, AND AS REPRESENTATIVE OF THE ESTATE OF AMY GARNER, DECEASED, AND AS NEXT FRIEND OF SOPHIA GARNER, FELICIA GARNER, ZACHARY GARNER, AND HANNAH GARNER, MINORS, AND CLARA GARNER, Appellees**

**On Appeal from the 116th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-18-03385**

## MEMORANDUM OPINION

Before Justices Whitehill, Partida-Kipness, and Pedersen, III
Opinion by Justice Pedersen, III

This appeal arises from a lawsuit that asserts a Dram Shop Act claim, among others.

Appellants,[1] who are among the defendants in the suit, bring this accelerated interlocutory appeal

from an order denying their motions to transfer venue. *See* TEX. CIV. PRAC. & REM. CODE ANN.

§ 5.003(b). We affirm.

---

[1] Yakely Rubio Galindo, Travis Young, Saul Perea, Richard Acebo, Emily Ford, David Hashemi Seddighzadeh, Angela Benton, Alyssa Moebus, Pappas Restaurants, Inc., PHCC Investments, and Charles Bray.

# I.
# BACKGROUND

On March 19, 2016, Amy Garner (Amy) was driving on Interstate 30 in Fort Worth, which is located in Tarrant County, when her Chevrolet Suburban was struck by a vehicle driven by Jwuan Johnson. Amy was killed in the collision. Four of her children, who were with her at the time, were seriously injured.

Later that same year, Amy's husband, appellee Norman Garner (Norman), individually, as the representative of her estate, and as next friend of the couple's children, filed a Rule 202 petition in Tarrant County District Court. *See* TEX. R. CIV. P. 202.1–.5 (authorizing pre-suit deposition in certain circumstances). This petition was heard by the trial court over a year later, on November 30, 2017, and the court signed an order that same day denying the petition.

Norman, individually, as the representative of Amy's estate, and as next friend of the children, next filed suit against Johnson and Pappas Restaurants, Inc. (Pappas) in Tarrant County District Court. Norman alleged, on information and belief, that Johnson had consumed alcohol shortly before the accident at a Pappadeaux restaurant in Arlington. According to Norman's petition, Pappas served an alcoholic beverage to Johnson even though it was apparent to Pappas that Johnson at the time "was obviously intoxicated to the extent that he presented a clear danger to [him]self and others." Norman asserted a Dram Shop Act claim against Pappas, *see* TEX. ALCO. BEV. CODE ANN. § 2.02(b),[2] as well as a negligence and a negligence per se claim.

A dispute arose between the parties regarding Norman's attempt to depose Pappas's corporate representative. Pappas filed a motion for protection and to quash the deposition, which

---

[2] Section 2.02(b) states:

> Providing, selling, or serving an alcoholic beverage may be made the basis of a statutory cause of action . . . upon proof that:
> (1) at the time the provision occurred it was apparent to the provider that the individual being sold, served, or provided with an alcoholic beverage was obviously intoxicated to the extent that he presented a clear danger to himself and others; and
> (2) the intoxication of the recipient of the alcoholic beverage was a proximate cause of the damages suffered.

the court granted on February 9, 2018. A little over a month later, Norman nonsuited the Tarrant County suit and re-filed suit in Dallas County. This suit also listed one of the couple's children, appellee Clara Garner, as a plaintiff, presumably because she had reached majority status.[3]

The Dallas County suit named as defendants (i) Johnson, (ii) Pappas, (iii) PHCG Investments, and (iv) a group of eleven employee bartenders or managers referred to herein as the Employee Defendants.[4] Appellees' claims against the foregoing defendants mirrored those they had previously asserted in their Tarrant County suit against Johnson and Pappas.[5] They also asserted that venue was appropriate in Dallas County "since some Defendants resided [there] at the time the cause of action occurred." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.002(a)(2) (providing for venue in county of defendant's residence at time cause of action accrued if defendant is a natural person). Moreover, appellees alleged that Employee Defendant Saul Perea "is an individual residing in Dallas County," and they alleged the same with respect to Employee Defendant Edward Carrigan.

Johnson, PHCG, Pappas, and the Employee Defendants, except for Employee Defendant Stephen Powell, each filed a motion to transfer venue from Dallas County to Tarrant County. The motions asserted venue was proper in Tarrant County because (i) the subject accident occurred there, *id.* § 15.002(a)(1), and (ii) Johnson and appellees reside there, *id.* § 15.002(a)(2), (a)(4). In addition, PHCG's and Pappas's motions urged that appellees failed to allege the county in which PHCG and Pappas had their principal office. *Id.* § 15.002(a)(3). Moreover, each of the Employee Defendants, except Employee Defendant Charles Bray, specifically denied that he or she resided

---

[3] Previously, in the Tarrant County suit, Clara, along with the couple's other children, was represented by Norman as her next friend.

[4] Nine of the eleven Employee Defendants, specifically, Yakely Rubio Galindo, Travis Young, Saul Perea, Richard Acebo, Emily Ford, David Hashemi Seddighzadeh, Angela Benton, Alyssa Moebus, and Charles Bray, are among the appellants in this appeal. Two of the Employee Defendants, Stephen Powell and Edward Carrigan, have not appealed.

[5] However, appellants contend that appellees' original Dallas County petition did not allege that the Employee Defendants, as opposed to Pappas, were providers under the Dram Shop Act.

in Dallas County on the date appellees' cause of action accrued. As for Bray, his motion noted that appellees' petition alleged that Bray resided in Orange County, not in Dallas County.

In addition, each of the venue motions, except Johnson's, urged that appellees failed to plead a viable Dram Shop Act claim against the Employee Defendants—and in particular, against defendants Perea and Carrigan, the two Employee Defendants alleged to reside in Dallas County. Finally, each of the motions, except Johnson's, argued that appellees failed to meet their burden of establishing proper venue under section 15.003 of the Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.003(a)(1)–(4).

On October 25, 2018, the district court heard the foregoing motions, except for Johnson's, Carrigan's, and Bray's. The hearing was conducted in part that day. However, the court deferred completion of the hearing (i) to permit appellees to cure a defect in an affidavit they previously offered in their opposition to the motions to transfer, and (ii) to allow Johnson, Carrigan, and Bray to set their motions for hearing so that the court could determine all pending motions at once. On October 31, 2018, before the venue hearing resumed, Bray filed a motion to dismiss appellees' claims against him pursuant to Rule 91a of the Texas Rules of Civil Procedure and set that motion for hearing on December 7, 2018.

Appellees filed a first amended petition on December 3, 2018, which alleged that Bray resides in Dallas County. However, they non-suited Bray later that same day, and four days after that, the court signed an order effectuating the nonsuit. On December 11, 2018, appellees filed a second amended petition that again named Bray as a defendant. Around this same time, defendants Johnson and Carrigan withdrew their pending motions to transfer.

The venue hearing resumed on December 18, 2018. That same day, following the hearing, the trial court signed an order denying the defendants' motions to transfer venue. PHCG, Pappas, and nine of the Employee Defendants have appealed the court's ruling.[6]

## II.
## ANALYSIS

The outcome of this appeal depends on our determination of whether appellees satisfied the requirements of Civil Practice and Remedies Code section 15.003(a), which applies in a suit in which there is more than one plaintiff. This statute "takes as its starting point a 'person who is unable to establish proper venue.'" *Surgitek, Bristol-Myers Corp. v. Abel*, 997 S.W.2d 598, 602 (Tex. 1999) (citing Act of May 8, 1995, 74th Leg., R.S., ch. 138, § 1, 1995 Tex. Gen. Laws 978, 979 (current version at TEX. CIV. PRAC. & REM. CODE ANN. § 15.003(a)).[7] Accordingly, the trial court "first has to determine whether a plaintiff can independently establish proper venue." *Id.* "This determination . . . is made using venue proof standards—if the plaintiff offers prima facie proof through pleadings and affidavits that venue is proper, the inquiry is over." *Id.*; *cf.* TEX. CIV. PRAC. & REM. CODE ANN. § 15.064(a) ("The court shall determine venue questions from the pleadings and affidavits."). Second, "when a plaintiff cannot establish proper venue, section 15.003(a) expressly places the burden on the plaintiff to 'establish' four elements before she can join venue for the suit." *Surgitek*, 997 S.W.2d at 602; *accord* TEX. CIV. PRAC. & REM. CODE ANN. § 15.003(a)(1)–(4).

In an interlocutory appeal of a trial court's determination under the statute, we must "determine whether the trial court's order is proper based on an independent determination from

---

[6] Powell, Carrigan, and Johnson are not parties to this appeal.

[7] Subsequent to *Surgitek*, the Legislature amended section 15.003(a). Act of June 2, 2003, 78th Leg., R.S. ch. 204, § 3.03, 2003 Tex. Gen. Laws 847, 853. The amended statute takes as its starting point "a plaintiff" who "cannot independently establish proper venue." *Id.* This language is in substance identical to the above-referenced statutory language that the supreme court construed in *Surgitek*.

the record and not under either an abuse of discretion or substantial evidence standard." TEX. CIV. PRAC. & REM. CODE ANN. § 15.003(c)(1). In other words, our "review of the merits" of the trial court's "joinder determination should be de novo." *Surgitek*, 997 S.W.2d at 603.[8] In conducting this review, we must consider the entire record, including any evidence presented at the hearing. *Id*.

## A.   Pleading and Proof of Venue Facts

We begin by considering whether each plaintiff independently established proper venue. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.003(b)(1). To make this determination, we will look to the rules generally applicable to motions to transfer venue. When such a motion is filed, "the initial burden of proof that venue is maintainable in the county of suit is on the plaintiff." *WTFO, Inc. v. Braithwaite*, 899 S.W.2d 709, 714 (Tex. App.—Dallas 1995, no writ) (citing TEX. R. CIV. P. 87(2)(a)).

Appellants' first issue contends that appellees failed to properly plead and prove that any of the defendants (and, in particular, Perea, Bray, and Carrigan) were residents of Dallas County at the time of the subject accident. To resolve this issue, we must determine whether appellees met their burden of properly pleading the requisite venue facts. *See* TEX. R. CIV. P. 87(2)(a), 87(3)(a). If so, and given appellants' specific denials of these facts, we will next determine whether appellees offered prima facie proof to support their venue allegations. *See WTFO*, 899 S.W.2d at 714 (citing TEX. R. CIV. P. 87(3)(a)).

---

[8] The version of section 15.003(c)(1) in effect when *Surgitek* was decided required the court of appeals to "determine whether the joinder or intervention is proper," Act of May 8, 1995, 74th Leg., R.S., ch. 138, § 1, 1995 Tex. Gen. Laws 978, 979, as opposed to the current version of the statute, which requires appellate review of "whether the trial court's order is proper," TEX. CIV. PRAC. & REM. CODE ANN. § 15.003(c)(1). Other than this difference, both versions of subsection (c)(1) are identical. Accordingly, we will apply the *Surgitek* court's articulation of the applicable standard of review to the facts of this case.

### 1. "Properly Pleaded"

Rule 87(2)(a) of the Texas Rules of Civil Procedure provides that "[a] party who seeks to maintain venue of the action in a particular county . . . has the burden to make proof, as provided in paragraph 3 of this rule, that venue is maintainable in the county of suit." TEX. R. CIV. P. 87(2)(a). Paragraph 3(a) of the rule provides, in pertinent part, that "[a]ll venue facts, *when properly pleaded*, shall be taken as true unless specifically denied by the adverse party." *Id.* R. 87(3)(a) (emphasis added).

#### a. Timeliness of Second Amended Petition

As an initial matter, the parties disagree on which petition this Court may consider in evaluating whether the venue facts were "properly pleaded." As of the October 25 venue hearing, appellees' original petition was the live pleading on file. On December 3, 2018, appellees filed their first amended petition. Eight days after that, on December 11, they filed their second amended petition. Appellants contend that these petitions were untimely because they were filed "within seven days . . . *or thereafter*" of the date that the venue hearing began, i.e, after the October 25 hearing, and appellees did not obtain leave of court to file these petitions late. TEX. R. CIV. P. 63 (emphasis added);[9] *see also In re Stroud Oil Props., Inc.*, 110 S.W.3d 18, 23 (Tex. App.—Waco 2002, orig. proceeding) (noting that the pleadings on which court makes its venue determination "are the live pleadings on file at the time of the hearing" (citations omitted)); *Taiwan Shrimp Farm Vill. Ass'n v. U.S.A. Shrimp Farm Dev., Inc.*, 915 S.W.2d 61, 69 (Tex. App.—Corpus Christi–Edinburg 1996, writ denied) (interpreting "date of trial" in Rule 63 as "the date the case is set for trial," not the date trial actually begins), *superseded by statute on other grounds as stated in Myriad Dev., Inc. v. Alltech, Inc.*, 817 F. Supp. 2d 946, 977–78 n.169 (W.D. Tex. 2011).

---

[9] We assume that a venue hearing is a trial for purposes of Rule 63. *See Moriarty v. Williams*, 752 S.W.2d 610, 611 (Tex. App.—El Paso 1988, writ denied) (noting that appellant's first amended original petition was filed more than seven days before venue hearing and was properly before court at such hearing (citing TEX. R. CIV. P. 63)).

Appellees respond that their second amended petition was timely because it was filed on December 11, which was seven days before the December 18 hearing. As support, appellees cite *Cantu v. Holiday Inns, Inc.*, 910 S.W.2d 113 (Tex. App.—Corpus Christi–Edinburg 1995, writ denied). In that case, the defendant filed a motion for summary judgment, and the motion was set for hearing on June 30, 1993. *Id.* Less than seven days before the hearing, the parties filed various documents related to the defendant's motion, and the defendant also filed an amended answer. *Id*. The parties appeared before the court on June 30 and on July 1. *Id.* The court continued the hearing for a month to permit the parties to cure the timeliness defects with respect to their late filings. *Id.* In this circumstance, our sister court held that the defendant's amended answer was timely because it was filed "more than 7 days before the hearing that resulted in summary judgment." *Id.* at 115. According to the *Cantu* court, "the key date for purposes of Rule 63 was the date of the final hearing from which the summary judgment sprang." *Id.* This Court has cited *Cantu* with approval. *Ganter v. Indep. Bank*, No. 05-15-00413-CV, 2016 WL 4376284, at *4 (Tex. App.—Dallas Aug. 16, 2016, pet. denied) (mem. op.) (summary judgment); *Selz v. Friendly Chevrolet, Ltd.*, 152 S.W.3d 833, 834–35 (Tex. App.—Dallas 2005, no pet.) (same); *accord Segal v. Bock*, No. 01-10-00445-CV, 2011 WL 6306623, at *4 (Tex. App.—Houston [1st Dist.] Dec. 15, 2011, no pet.) (mem. op.) (same). We conclude that the reasoning from *Cantu* applies here, and the second amended petition was filed timely. We will consider this petition in evaluating whether the venue facts were "properly pleaded."

### b. Sufficiency of Factual Allegations

Section 15.002 of the Civil Practice and Remedies Code provides that venue is proper in (i) "the county in which all or a substantial part of the events or omissions giving rise to the claim occurred," or (ii) "the county of [the] defendant's residence at the time the cause of action accrued if [the] defendant is a natural person," or (iii) "the county of the defendant's principal office in this

state, if the defendant is not a natural person," or (iv) if the foregoing grounds do not apply, the county of the plaintiff's residence at the time the cause of action accrued. TEX. CIV. PRAC. & REM. CODE ANN. § 15.002(a)(1)–(4).

Here, the second amended petition alleges that Perea, Bray, and Carrigan were residents of Dallas County at the time the cause of action accrued. We conclude that these venue facts were properly pleaded.

### 2. "Prima Facie Proof"

As noted previously, the defendants specifically denied the foregoing allegations. Given these denials, appellees bore the burden of offering "prima facie proof" of the venue facts alleged in the second amended petition. *WTFO*, 899 S.W.2d at 714 (citing TEX. R. CIV. P. 87(3)(a)). Such proof "is made when the venue facts are properly pleaded and an affidavit, and any duly proved attachments to the affidavit, are filed fully and specifically setting forth the facts supporting such pleading." TEX. R. CIV. P. 87(3)(a). Affidavits must "be made on personal knowledge," must "set forth specific facts as would be admissible in evidence," and must "show affirmatively that the affiant is competent to testify." *Id.*

To meet that burden, appellees filed the affidavit of Jamie Nay, a licensed private investigator and process server whom appellees retained to locate and serve process on multiple defendants in this case. According to the affidavit, Nay ran searches in a database (TLOxp), which revealed that Bray, Carrigan, and Perea resided in Dallas County in 2016 when the cause of action accrued. At the October 25 hearing, the court granted appellees leave to file an amended Nay affidavit to attach the information that Nay obtained from TLOxp upon conducting her searches. Appellees did so on November 1, 2018. Nay's amended affidavit also states that private investigators "customarily rely" upon TLOxp in "determining the residence of individuals within the State of Texas at a given time."

–9–

In addition, on December 18, appellees filed with the court a copy of Carrigan's objections and responses to appellees' request for admissions. Appellees also raised these responses with the court during the hearing that same day. In the responses, Carrigan admitted that he resided in Dallas County at the time of the incident in question.

Appellants objected to Nay's amended affidavit, among other grounds, on the basis that it was inadmissible hearsay. They also urged that the Carrigan admission was not properly before the court because it was not filed until the day of the hearing. The court overruled appellants' evidentiary objections, but it did not rule on appellants' objection to the Carrigan admission. Appellants contend that the trial court erred in admitting the amended Nay affidavit into evidence. They also argue that the Carrigan admission was untimely and that the record reflects the court did not consider it.

We agree that the Carrigan admission was untimely absent leave of court. *See* TEX. R. CIV. P. 87(1) ("Except on leave of court, any response or opposing affidavits shall be filed at least 30 days prior to the hearing of the motion to transfer."). Moreover, the record must affirmatively indicate that such leave was granted. *Cf. B.C. v. Steak N Shake Operations, Inc.*, 532 S.W.3d 547, 550 (Tex. App.—Dallas 2017, pet. pending) (noting that, if summary-judgment response is filed late, "the record must contain an affirmative indication that the trial court permitted the late filing or the response is a nullity"). Here, the December 18 order denying the motions to transfer venue states that the court "consider[ed] these motions[,] all other pleadings on file in this case, arguments of counsel, *and all other evidence on file*." (Emphasis added). We interpret this recitation as an affirmative indication that the court granted appellees leave to file the Carrigan admission.[10] *Cf. Villarreal v. Chesapeake Operating, LLC*, No. 04-16-00107-CV, 2016 WL

---

[10] In *Steak N Shake*, this Court held that a summary-judgment order's recitation that the trial court "consider[ed] pleadings, evidence, and arguments of counsel" was not an "affirmative indication" that the court considered the non-movant's late-filed evidence. 532 S.W.3d at 550–51.

5112218, at \*2 (Tex. App.—San Antonio Sept. 21, 2016, no pet.) (mem. op.) (concluding that recital in summary-judgment order that trial court considered "the pleadings, motion, responses, and evidence on file" reflected that court granted movant's leave to file untimely summary judgment evidence); *Pink v. Goodyear Tire & Rubber Co.*, 324 S.W.3d 290, 294 (Tex. App.—Beaumont 2010, pet. dism'd) (holding that recital in judgment that trial court considered "all of the evidence on file" when it granted summary judgment made it apparent that court considered non-movant's supplemental summary judgment response in rendering judgment). Thus, the Carrigan admission is within the scope of our review, and this admission demonstrates that Carrigan was a resident of Dallas County at the time the cause of action accrued. *See* Tex. Civ. Prac. & Rem. Code Ann. § 15.002(a)(2). In sum, appellees have offered "prima facie" proof of the venue allegation with respect to Carrigan. *See* Tex. R. Civ. P. 87(3)(a); *WTFO*, 899 S.W.2d at 714. Accordingly, we need not determine whether the court erred in admitting the amended Nay affidavit. We overrule appellants' first issue.

**B.    Viability of Claims against Employee Defendants**

Appellants' second issue argues that appellees "did not 'properly' plead claims against any of the [d]efendants who were added to the case to establish venue in Dallas County"—specifically, the Employee Defendants—"because no negligence or dram shop causes of action exist against them as a matter of law." In considering this issue, we will first examine appellees' contention that Rule 87 does not require us to determine whether appellees' claims against the Employee Defendants are viable as a matter of law. As described previously, the rule provides that "[i]t shall not be necessary for a claimant to *prove* the merits of a cause of action, but the existence of a cause

---

In contrast to the order in *Steak N Shake*, the order in this case states that the court considered "*all* other evidence on file," (emphasis added), which we interpret as an affirmative indication that the court considered the Carrigan admission filed by appellees that same day.

of action, when *pleaded properly*, shall be taken as established as alleged by the pleadings." TEX. R. CIV. P. 87(2)(b) (emphases added).

In *In re Texas Department of Transportation*, the Texas Supreme Court held that the plaintiffs failed to "properly plead" a contemporaneous-activity negligence cause of action for which Travis County would be a proper venue. 218 S.W.3d 74, 76, 78–79 (Tex. 2007) (orig. proceeding) (per curiam).[11] The Austin Court of Appeals has also held that "a proper pleading as defined by Rule 87" must include "facts that demonstrate standing," *In re Valetutto*, 976 S.W.2d 893, 895 (Tex. App.—Austin 1998, orig. proceeding) (per curiam). Others of our sister courts have assumed this to be true without deciding the issue. *See In re Arcababa*, No. 10-13-00097-CV, 2013 WL 5890109, at *4 (Tex. App.—Waco Oct. 31, 2013, orig. proceeding) (mem. op.) (assuming that Rule 87 pleadings require allegations supporting ripeness); *In re Reynolds*, 369 S.W.3d 638, 649 (Tex. App.—Tyler 2012, orig. proceeding) (same); *Sw. Bell Tel. Co. v. Superior Payphones, Ltd.*, No. 13–05–661–CV, 2006 WL 417423, at *5–6 (Tex. App.—Corpus Christi–Edinburg Feb. 23, 2006, pet. dism'd) (mem. op.) (questioning whether, but assuming without deciding that, "the subject of standing is properly encompassed within [a] venue appeal"). Moreover, in *Garrett v. Patterson-UTI Drilling Co*, the Eastland Court of Appeals concluded that a defendant's residence is immaterial for venue purposes if the plaintiff cannot assert a claim against him. 299 S.W.3d 911, 914 (Tex. App.—Eastland 2009, pet. denied). Although a claimant need not prove the merits of its cause of action at the venue stage, *see* TEX. R. CIV. P. 87(2)(b), the *Garrett* court looked only to whether the plaintiff in that case could plead one—"a question of law that does not require the consideration of evidence." 299 S.W.3d at 914.

---

[11] Instead, the plaintiffs in *Texas Department of Transportation* "properly pled premises and special defect causes of action, but neither of these claims arose, in any part, in Travis County." *Id.* at 78.

Based on the foregoing authorities, we conclude that Rule 87 requires us to consider whether appellees have alleged a viable cause of action, i.e., a "properly pleaded" claim, to the extent our determination of this question disposes of whether appellees filed suit in the proper venue. We next consider whether the claims against the Employee Defendants, and in particular, the claim against Carrigan, were cognizable under Chapter 2 of the Alcoholic Beverage Code. *See* TEX. ALCO. BEV. CODE ANN. §§ 2.01–.03. This statute, which is commonly known as the Dram Shop Act, *20801, Inc. v. Parker*, 249 S.W.3d 392, 395 n.2 (Tex. 2008), "provides the exclusive cause of action for *providing* an alcoholic beverage to a person 18 years of age or older," TEX. ALCO. BEV. CODE ANN. § 2.03(c) (emphasis added). This cause of action is available against commercial providers only. *Smith v. Merritt*, 940 S.W.2d 602, 605 (Tex. 1997); *Graff v. Beard*, 858 S.W.2d 918, 919 (Tex. 1993). The statute defines a "provider" as "a person who sells or serves an alcoholic beverage under authority of a license or permit issued under the terms of this code or who otherwise sells an alcoholic beverage to an individual." TEX. ALCO. BEV. CODE ANN. § 2.01(1); *see also El Chico Corp. v. Poole*, 732 S.W.2d 306, 314 (Tex. 1987) (noting that "[t]he legislature amended the Alcoholic Beverage Code to include a civil cause of action against an alcoholic beverage licensee").[12]

The parties join issue as to whether the Employee Defendants qualified as "providers." Appellants cite decisions by the Texas Supreme Court that refer to a provider as separate from its employees. *See 20801*, 249 S.W.3d at 396 (noting that Legislature "decided . . . to allow providers to avoid [Dram Shop Act] liability by having their employees attend certain training programs" (citing TEX. ALCO. BEV. CODE ANN. §§ 2.02(b), 106.14(a))); *F.F.P. Operating Partners, L.P. v. Duenez*, 237 S.W.3d 680, 684 (Tex. 2007) ("If a plaintiff meets the onerous burden of proof

---

[12] In *El Chico*, the Texas Supreme Court created a common-law duty owed by alcoholic beverage licensees to injured third parties. *Id.* at 314. However, during the same week that *El Chico* was decided, the Legislature superseded the newly recognized common-law duty by amending the Alcoholic Beverage Code to create the Dram Shop Act. *Smith*, 940 S.W.2d at 605.

–13–

imposed by the Dram Shop Act, then the provider is liable for damages proximately caused by its employees or patrons." (citation and internal quotation marks omitted)). However, the question of whether a licensee's employees can themselves be liable as "providers" was not at issue in those cases because the subject employees were not named as individual defendants. *See 20801*, 249 S.W.3d at 395 (identifying 20801, Inc., the operator of "Slick Willie's Family Pool Hall," as the defendant sued); *F.F.P*, 237 S.W.3d at 682–83 (noting that assistant manager, though initially sued, was subsequently nonsuited). Appellants also cite *Leitch v. Hornsby*, a non-Dram Shop Act case that held, "unless alter ego is established, corporate officers and agents are subject to personal liability for their actions within the employment context only when they breach an independent duty of care." 935 S.W.2d 114, 117 (Tex. 1996). Appellants contend that the Dram Shop Act did not impose an independent duty of care on the Employee Defendants, but rather, the statute imposed such a duty only on the licensee who employed them.

Appellees respond that the term "person," as used in the statutory definition of a 'provider," TEX. ALCO. BEV. CODE ANN. § 2.01(1), means "a natural person or association of natural persons, trustee, receiver, partnership, corporation, organization, *or the manager, agent, servant, or employee of any of them*." *Id.* § 1.04(6) (emphasis added); *see also id.* at §1.04(11) (defining "permittee" as including "an agent, servant, or employee of" a "person who is the holder of a permit provided for in this code"); *id.* § 1.04(16) (defining "licensee" as including "any agent, servant, or employee of" a "person who is the holder of a license provided in this code").[13] In appellees' view, each of the Employee Defendants met the statutory definition of a "person," and therefore each such defendant qualified as a "provider." Appellees also cite *Grand Aerie Fraternal Order of Eagles v. Haygood*, in which the Eastland Court of Appeals stated in dicta that "the server

---

[13] Though section 1.04 is not contained in Chapter 2 of the Alcoholic Beverage Code, its definitions apply to Chapter 2. *See* TEX. ALCO. BEV. CODE ANN. § 1.04 (stating that definitions apply "in this code").

or bartender may be liable" under the Dram Shop Act, though such liability "is not imputed to an employer who requires its servers to attend an approved alcohol-service class if the server actually attended the class, unless the employer encouraged service of intoxicated persons."[14] 402 S.W.3d 766, 776 (Tex. App.—Eastland 2013, no pet.) (citing TEX. ALCO BEV. CODE ANN. §§ 2.01(1), 2.202(b), 106.140(a)). Moreover, they rely on *Mata v. Schoch*, in which a federal district court noted that "courts have placed special emphasis on the elements of serving and selling alcohol" when "construing the definition of provider under the Texas Dram Shop Act." 337 B.R. 135, 137 (S.D. Tex. 2005). In that case, the court granted a summary judgment in favor of the defendant manager based on his uncontroverted affidavit which showed that he "never personally sold or served alcohol" to the subject driver. *Id.* at 138.

In the absence of controlling case authority that addresses the issue before us, we will interpret the relevant statutory provisions according to well-settled principles of statutory construction. "To discern [legislative] intent, we begin with the statute's words." *TGS–NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011); *see also* TEX. GOV'T CODE ANN. § 311.011(a) ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage."). If a statute's language is unambiguous, we interpret this language according to its plain meaning. *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 899 (Tex. 2017) (per curiam). In so doing, "we presume the Legislature included each word in the statute for a purpose and that words not included were purposefully omitted." *Id.* (citation and internal quotation marks omitted).

As described previously, section 1.04(6) of the Alcoholic Beverage Code defines "person" as including "the manager, agent, servant, or employee" of "a natural person or association of

---

[14] Although the bartender was among the defendants sued in *Haygood*, the issue before the court was whether the trial court erred in denying a special appearance filed by one of the other defendants. *Id.* at 771–72.

natural persons." This definition applies throughout the Code. Thus, section 2.01(1)'s definition of a "provider" as a "person who sells or serves an alcoholic beverage under authority of a license," when considered in the context of section 1.04(6), includes a "manager, agent, servant, or employee" of a licensee. Moreover, section 2.02(b)'s creation of a statutory cause of action against "provider[s]" necessarily includes "person[s]" as set forth in section 2.01(1), which, in turn, includes "manager[s], agent[s], servant[s], or employee[s]" as set forth in section 1.04(6). Read together, the foregoing provisions create a statutory cause of action against employees of a licensee who sell or serve an alcoholic beverage under the authority of their employer's license, assuming the other elements of the statute are met.

We must also "read the statute as a whole and interpret it to give effect to every part." *20801*, 249 S.W.3d at 396 (citation and internal quotation marks omitted). Related to this point, appellants contend that the Alcoholic Beverage Code's safe harbor provision, *see* TEX. ALCO. BEV. CODE ANN. § 160.14, could never apply to individual employees because they "are not and cannot be the employer/licensee." They urge that the inclusion of individual employees as "providers" would allow an employer to escape liability while an employee would not, which in appellants' view would circumvent the purpose of the statute. *Cf. Graff*, 858 S.W.2d at 919 (in rejecting appellant's request to recognize common-law social host liability, finding it significant that the Legislature considered and declined to provide for such liability in the Dram Shop Act); *see also Smith v. Sewell*, 858 S.W.2d 350, 354 (Tex. 1993) (noting that a statute which "creates a liability unknown to the common law . . . will be strictly construed in the sense that it will not be extended beyond its plain meaning or applied to cases not clearly within its purview"). We disagree that the unavailability of a statutory safe harbor for employees necessarily means that they cannot be considered "providers" under the statute. Whatever the practical effect of the foregoing provisions, "we must take statutes as we find them." *Tex. Lottery Comm'n v. First State Bank of DeQueen*,

325 S.W.3d 628, 637 (Tex. 2010). We "are not empowered to . . . disregard[ ] direct and clear statutory language that does not create an absurdity." *Id.* at 638.

On the topic of "absurdity," appellants note that the Dram Shop Act creates a cause of action against "providers . . . for the actions of their employees, customers, members or guests who are or become intoxicated," TEX. ALCO. BEV. CODE ANN. § 2.03(a), and they urge that such "employees, customers, members, or guests" belong only to the employer, i.e., the licensee. They also argue that an employee is not subject to a revocation hearing, *id.* §§ 2.02(b), 6.01(b), because the employee is not a licensee. In appellants' view, appellees' interpretation of the Act is contrary to the foregoing principles and would therefore lead to an absurd result. *See Combs v. Health Care Servs. Corp.*, 401 S.W.3d 623, 629 (Tex. 2013) ("If a statute is worded clearly, we must honor its plain language, unless that interpretation would lead to absurd results."). Nevertheless, "the bar for reworking the words our Legislature passed into law is high, and should be." *Id.* at 630. In other words, "[t]he absurdity safety valve is reserved for truly exceptional cases, and mere oddity does not equal absurdity." *Id.* In our view, the inclusion of a licensee's employees within the statutory definition of a "provider" does not rise to the level of creating an absurdity.

Accordingly, we conclude that section 2.02(b), when read together with sections 2.01(1) and 1.04(6), creates a statutory cause of action against employees of a licensee who sell or serve an alcoholic beverage under the circumstances set forth in the statute. The second amended petition pleads such a cause of action against the Employee Defendants, and in particular, against Carrigan. Thus, the Dram Shop Claim against the Employee Defendants was "pleaded properly." *See* TEX. R. CIV. P. 87(2)(b).

For these reasons, we overrule appellants' second issue. We need not consider their third issue, which contends that each plaintiff failed to establish the statutory requirements for joining a

pending suit for which such plaintiff could not independently establish proper venue. TEX. CIV. PRAC. & REM. CODE ANN. § 15.003(a)(1)–(4).

## III.
## CONCLUSION

We affirm the district court's order denying appellants' motions to transfer venue.


/Bill Pedersen, III/
BILL PEDERSEN, III
JUSTICE


190061F.P05



# Court of Appeals
# Fifth District of Texas at Dallas
## JUDGMENT

YAKELYN RUBIO GALINDO, TRAVIS YOUNG, SAUL PEREA, RICHARD ACEBO, EMILY FORD, DAVID HASHEMI SEDDIGHZADEH, ANGELA BENTON, ALYSSA MOEBUS, PAPPAS RESTAURANTS, INC., PHCG INVESTMENTS, AND CHARLES BRAY, Appellants

No. 05-19-00061-CV     V.

NORMAN GARNER, INDIVIDUALLY, AND AS REPRESENTATIVE OF THE ESTATE OF AMY GARNER, DECEASED, AND AS NEXT FRIEND OF SOPHIA GARNER, FELICIA GARNER, ZACHARY GARNER, AND HANNAH GARNER, MINORS, AND CLARA GARNER, Appellees

On Appeal from the 116th Judicial District Court, Dallas County, Texas
Trial Court Cause No. DC-18-03385.
Opinion delivered by Justice Pedersen, III.
Justices Whitehill and Partida-Kipness participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellees NORMAN GARNER, INDIVIDUALLY, AND AS REPRESENTATIVE OF THE ESTATE OF AMY GARNER, DECEASED, AND AS NEXT FRIEND OF SOPHIA GARNER, FELICIA GARNER, ZACHARY GARNER, AND HANNAH GARNER, MINORS, AND CLARA GARNER recover their costs of this appeal from appellants YAKELYN RUBIO GALINDO, TRAVIS YOUNG, SAUL PEREA, RICHARD ACEBO, EMILY FORD, DAVID HASHEMI SEDDIGHZADEH, ANGELA BENTON, ALYSSA MOEBUS, PAPPAS RESTAURANTS, INC., PHCG INVESTMENTS, AND CHARLES BRAY.

Judgment entered this 14th day of May 2019.