**Affirmed and Majority and Dissenting Opinions filed May 11, 2021.**



In The

# Fourteenth Court of Appeals

### NO. 14-19-00335-CV

## CRYSTAL GREGG, Appellant

## V.

## WALGREEN CO., Appellee

**On Appeal from the County Civil Court at Law No. 2**
**Harris County, Texas**
**Trial Court Cause No. 1109623**

## MAJORITY OPINION

This is an appeal from a no-evidence summary judgment in a slip-and-fall case. The appellant/plaintiff asserts that the trial court erred in granting summary judgment despite the existence of fact issues on two essential elements challenged in the motion and despite the defendant/appellee's alleged spoliation of evidence. We affirm.

# I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant/plaintiff Crystal Gregg allegedly slipped and fell on a puddle of water on the floor of a store controlled by appellee/defendant Walgreen Co. (hereinafter "Walgreens"). Gregg filed suit against Walgreens asserting a negligence claim based on a premises-liability theory and a negligent-activity theory. Walgreens filed a no-evidence summary-judgment motion, asserting that there is no evidence that (1) a condition posed an unreasonable risk of harm, or (2) Walgreens had actual or constructive knowledge of such a condition on the premises. Walgreens also asserted a no-evidence ground challenging the negligent-activity theory.

In response to Walgreens's motion, Gregg asserted that the evidence it submitted raised a genuine fact issue as to the two challenged elements of its premises-liability theory. Gregg also asserted that the trial court should deny summary judgment based on Walgreens's alleged spoliation of evidence. Walgreens filed a reply. The trial court granted summary judgment without specifying the grounds on which the trial court relied. Gregg has timely appealed.

# II. ISSUES AND ANALYSIS

On appeal, Gregg asserts four appellate issues. In the first two issues, Gregg argues that the summary-judgment evidence raises a genuine fact issue as to the two challenged elements of her premises-liability theory. In the third and fourth issues, Gregg contends that Walgreens's alleged spoliation of evidence precludes summary judgment. On appeal, Gregg has not challenged the trial court's summary judgment as to her negligent-activity theory.

## A. May this court consider the video evidence submitted by Walgreens?

Walgreens moved the trial court for a no-evidence summary judgment.

Walgreens did not seek a traditional summary judgment. Consistent with its requested relief, Walgreens attached no evidence to its motion and did not rely on any evidence in support of its motion. In her summary-judgment response, Gregg submitted evidence that she claimed raised a genuine fact issue precluding summary judgment on the premises-liability theory. Gregg did not submit or rely on any video evidence. Gregg also asserted that about an hour after she fell in the Walgreens store, the store manager reviewed surveillance video showing Gregg's fall, and the manager saved a video excerpt on a CD so it could be sent to Walgreens's insurance carrier. Although Walgreens saved this video showing the area in which Gregg fell starting from approximately 17 seconds before her fall, Walgreens did not save the part of the surveillance video showing this part of the store during the two hours before this excerpt (the "Deleted Video"). According to Gregg, Walgreens engaged in spoliation of evidence when it allowed its surveillance video system to tape over this two-hour portion of the surveillance video approximately three months after Gregg's fall. Based on this alleged spoliation of evidence, Gregg argued that Walgreens should be estopped from obtaining a summary judgment.

In its summary-judgment reply Walgreens provided a hyperlink to a dropbox allegedly containing the video excerpt saved by the store manager on the day of Gregg's fall. Though Walgreens discussed the video in the context of Gregg's spoliation-of-evidence allegations, Walgreens also asserted in its reply that the video "conclusively demonstrates that [Gregg's] premises liability claim has no basis in fact or law." According to Walgreens's reply, the video shows that Gregg did not slip on water and that Gregg fell because the heel of her shoe "buckled." Walgreens did not amend its summary-judgment motion to seek a traditional summary judgment based on the video, and the trial court granted Walgreens's no-

3

evidence motion eight days after Walgreens filed its reply.

In its appellate brief, Walgreens provides this court with a hyperlink to a dropbox containing the video excerpt. As in the trial court, although Walgreens discusses the video in the context of the spoliation-of-evidence issues, Walgreens also treats the video as if it were part of the summary-judgment evidence and makes arguments based on the video's contents in response to Gregg's first two issues. If Walgreens wanted to seek summary judgment based on this video, Walgreens should have sought a traditional summary judgment based on the video. Instead, Walgreens sought only a no-evidence summary judgment. Gregg did not submit this video as evidence in response to Walgreens's summary-judgment motion. Neither in the trial court nor on appeal has Gregg asserted that the video raises a fact issue precluding summary judgment. In this context, we may not consider the video in determining whether the summary-judgment evidence raises a genuine fact issue on any of the grounds Walgreens asserted in its motion. *See Binur v. Jacobo*, 135 S.W.3d 646, 651 (Tex. 2004) (stating that evidence attached to a summary-judgment motion asserting only no-evidence grounds should not be considered as a basis for affirming the granting of the motion but may be considered in determining if the evidence raises a fact issue); *Garrett v. Patterson-UTI Drilling Co.*, 299 S.W.3d 911, 917 (Tex. App.—Eastland 2009, pet. denied) (same as *Binur*); *see also Stettner v. Lewis & Maese Auction, LLC*, 611 S.W.3d 102, 109 (Tex. App.—Houston [14th Dist.] 2020, no pet.) (stating that "[i]n reviewing the propriety of summary judgment on no-evidence grounds, we ignore evidence attached to a combined summary-judgment motion and offered in support of traditional-summary-judgment grounds, unless the non-movant directed the trial court to that evidence in the response to the movant's no-evidence motion").

Nonetheless, Gregg's third and fourth issues raise the question of whether

the trial court erred in impliedly denying Gregg's request for a remedy for Walgreens's alleged spoliation of evidence. Because the video is relevant to this issue raised in Gregg's response, we may consider the video as part of our spoliation-of-evidence analysis. *See Costley v. H.E. Butt Grocery Co.*, No. 10-07-00337-CV, 2009 WL 2264116, at *1–2 (Tex. App.—Waco Jul. 29, 2009, pet. dism'd) (considering evidence submitted in trial court by movant for no-evidence summary judgment in response to non-movant's spoliation-of-evidence assertion, for the purposes of analyzing the spoliation-of-evidence assertion) (mem. op.).

## B. Did the trial court err in impliedly denying Gregg's request for a remedy for Walgreen's alleged spoliation of evidence?

In her third issue and fourth issues and her argument under these issues, Gregg argues that this court should reverse the trial court's summary judgment because Walgreens's alleged spoliation of evidence prevented Gregg from being able to establish constructive notice. As to the remedy Gregg sought for the alleged spoliation of evidence, Gregg did not ask the trial court to apply a presumption that the missing evidence would have been unfavorable to Walgreens. Instead, in her summary-judgment response, Gregg asserted that based on Walgreens's alleged spoliation of evidence, Walgreens should be estopped from obtaining a summary judgment. By granting Walgreens's motion, the trial court impliedly denied Gregg's request for this estoppel remedy for Walgreens's alleged spoliation of evidence. *See Garcia v. Sellers Bros., Inc.*, No. 14-05-00954-CV, 2006 WL 3360473, at *3 (Tex. App.—Houston [14th Dist.] Nov. 21, 2006, no pet.) (mem. op.); *Aguirre v. South Texas Blood & Tissue Center*, 2 S.W.3d 454, 457 (Tex. App.—San Antonio 1999, pet. denied). We review the trial court's denial of the estoppel remedy sought by Gregg for Walgreens's alleged spoliation of evidence under the abuse-of-discretion standard of review. *See Brookshire Bros., Ltd. v. Aldridge*, 438 S.W.3d 9, 27 (Tex. 2014); *Garcia*, 2006 WL 3360473, at *3. A trial

court abuses its discretion if it acts arbitrarily, unreasonably, or without reference to any guiding rules or principles. *See Flowers v. Flowers*, 407 S.W.3d 452, 457 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

The trial court, rather than the jury, determines whether a party spoliated evidence and, if so, what the appropriate remedy for the spoliation should be. *See Brookshire Bros., Ltd.*, 438 S.W.3d at 20. Gregg, as the party alleging spoliation, bore the burden of proving that Walgreens had a duty to preserve the Deleted Video. *See id*. This duty arose only if Walgreens knew or reasonably should have known that there was a substantial chance that Gregg would file a claim and that the Deleted Video would be material and relevant to Gregg's claim. *See id*. Gregg also had the burden of proving that Walgreens breached its duty to preserve the Deleted Video. *See id*. The trial court may instruct a jury to presume that the Deleted Video would have been unfavorable to Walgreens only if the trial court finds that (1) Walgreens acted with intent to conceal discoverable evidence, or (2) Walgreens acted negligently and caused Gregg to be irreparably deprived of any meaningful ability to present a claim or defense. *See id*. at 22–26.

The summary-judgment evidence submitted by Gregg includes the deposition testimony of Esmeralda Calzoncinth, the manager of the store in which Gregg fell. Calzoncinth testified as follows:

- Gregg told Calzoncinth "exactly where she fell."
- Calzoncinth visually inspected the area of the floor where Gregg said she fell to see if there were skid marks or any kind of liquid, and she did not see any type of liquid or skid mark.
- Gregg did not mention anything about the floor being wet or about Gregg's clothes being wet.
- When Calzoncinth approached Gregg after her fall, Calzoncinth noticed that Gregg looked pale and was "shaky." While Calzoncinth was getting information from Gregg, Gregg began to "sway a little," and Calzoncinth

6

had to catch Gregg to keep her from falling a second time.

- Calzoncinth asked someone to call 911, but Gregg "popped up" and said that they should not call 911.

- One employee gave Gregg a brace for her wrist, which Gregg said was hurting. The Walgreens employees gave Gregg a chair to sit in and did her shopping for her. After Calzoncinth rang Gregg's purchases up for her and brought them to her, Gregg left the store.

- Calzoncinth presumed that either some kind of illness or the heels on Gregg's shoes may have caused Gregg to fall.

- A cashier who was near Gregg when Gregg fell told Calzoncinth that the floor was not wet and that there was nothing on the floor where Gregg fell.

- Calzoncinth inspected the floor and determined that there was nothing on the floor.

- After Gregg fell, Calzoncinth called Walgreens's insurance carrier and told them about Gregg's fall.

- Within an hour after Gregg fell, Calzoncinth reviewed surveillance video.

- Calzoncinth made a CD containing the surveillance video, starting just before Gregg entered the store.

- Calzoncinth did not review the surveillance video for any time period before the time period covered by the video that she copied onto the CD.

- Calzoncinth did not find it necessary to review or save video as to any earlier time periods because there was not a spill and she could only save a certain amount of video on a CD.

- The surveillance-video machine automatically tapes over the surveillance video after about three months, and the Deleted Video is no longer available.

- There are 16 cameras in the Walgreens store, and the camera from which Calzoncinth made the CD was the only one that showed where Gregg fell.

The summary-judgment evidence submitted by Gregg also includes Gregg's deposition testimony, in which Gregg describes what occurred when she went into the Walgreens store the time she fell. Gregg testified that she does not remember whether she had any discussion with any Walgreens employee about a puddle on the floor. Gregg did not say anything in her deposition testimony about telling any

7

Walgreens employee that the floor was wet or that Gregg's clothes were wet. Gregg submitted photographs that were taken from the CD Calzoncinth made of the surveillance video. The photographs do not show any liquid on the floor in the area where Gregg fell.

The video that Walgreens provided shows the store for approximately 17 seconds before Gregg entered the store and covers the approximately 10 minutes during which Gregg was in the store, including her fall and her interaction with the cashier and with Calzoncinth.[1] The video shows the area where Gregg fell, and the video does not show any liquid on the floor in this area.

Approximately two and a half months after Gregg's fall, Gregg's lawyer sent a letter to Walgreens's insurer requesting preservation of evidence:

> In addition to advising of our representation of Ms. Gregg, this correspondence shall serve as a request that Walgreens immediately take appropriate steps to preserve any documentary or physical evidence related to the accident, including but not limited to any store surveillance videotape which captured some or all of the incident in question. Failure to comply will result in a spoliation instruction should this matter ultimately proceed to trial.

In this letter, Gregg's counsel did not state any of the following: (1) that Gregg slipped and fell, (2) that Gregg slipped and fell on water or any other liquid, or (3) that Gregg's injuries were related to a condition at the Walgreens store that posed an unreasonable risk of harm.

Subsequently, more than one and a half years after the fall, Gregg's lawyer sent a letter requesting that Walgreens's produce the Deleted Video. In her testimony, Calzoncinth stated that the Deleted Video was no longer available because the surveillance-video machine tapes over past video after about three

---

[1] As stated above, we consider this video only as part of the spoliation-of-evidence analysis.

months. Thus, the Deleted Video was taped over more than a year before Gregg's lawyer requested it in this letter.

Gregg contends that although Walgreens saved the video showing the area in which Gregg fell for the entire time during which she was in the store, Walgreens did not save the part of the surveillance video showing this part of the store during the two hours before this excerpt and allowed the machine to tape over this video about three months after Gregg's fall. According to Gregg, this conduct by Walgreens constitutes spoliation of evidence for which the trial court should have provided the estoppel remedy Gregg requested. Gregg contends that this spoliation of the Deleted Video prevented her from using the Deleted Video to determine the source of the alleged water puddle and to determine how long the alleged puddle was on the floor before Gregg allegedly slipped and fell on it.

We presume for the sake of argument that when Walgreens allowed the surveillance video system to tape over the Deleted Video, approximately three months after Gregg's fall, Walgreens knew or reasonably should have known that there was a substantial chance that Gregg would file a claim. While the Deleted Video was still available, Gregg did ask that Walgreens take appropriate steps to preserve "any documentary or physical evidence related to the accident, including but not limited to any store surveillance videotape which captured some or all of the incident in question." At this point, Walgreens had already preserved store surveillance video capturing all of the incident in question, thus complying with this part of Gregg's request.

Gregg also asked generally that Walgreens take appropriate steps to preserve any documentary or physical evidence related to the accident, but the evidence indicates that Walgreens did not know the nature of any potential claim or complaint by Gregg when the Deleted Video was taped over. The evidence shows

that neither the cashier who was nearby when Gregg fell nor the manager saw any liquid or skid mark on the floor in the place where Gregg fell. The manager testified that Gregg did not mention anything about the floor being wet or about Gregg's clothes being wet. The evidence does not show that at any point before the Deleted Video was taped over, Gregg or her lawyer told Walgreens (1) that Gregg contended she had slipped on water, or (2) that Gregg contended there was a condition on Walgreen's premises that posed an unreasonable risk of harm. Based on Calzoncinth's testimony, the pictures, and the video, Calzoncinth did not observe water or another condition of the premises that could have caused Gregg to fall, and Calzoncinth thought that either some kind of illness or the heels on Gregg's shoes may have caused Gregg to fall. After carefully reviewing all the evidence before us for the purposes of the spoliation issues, we conclude that the trial court did not abuse its discretion by impliedly finding that Gregg failed to carry her burden of establishing that Walgreens knew or reasonably should have known that the Deleted Video would be material and relevant to Gregg's claim. *See Brookshire Bros., Ltd.*, 438 S.W.3d at 20; *MRT, Inc. v. Vounckx*, 299 S.W.3d 500, 510–11 (Tex. App.—Dallas 2009, no pet.). Thus, the trial court did not abuse its discretion in impliedly denying Gregg's request that Walgreens be estopped from obtaining summary judgment as a remedy for Walgreens's alleged spoliation of the Deleted Video.

Gregg relies on the Second Court of Appeals's opinion in *Adobe Land Corporation v. Griffin*. *See* 236 S.W.3d 351, 356–60 (Tex. App.—Fort Worth 2007, pet. denied). In *Adobe Land*, the defendant, a manufacturer of crop-protection chemicals, discarded its only sample of a batch of one of its products after the plaintiffs already had filed suit against the defendant alleging that the product was defective and that the product proximately cause the elimination of the

10

plaintiffs' entire alfalfa crop. *See id.* at 358. At the time of the alleged spoliation of evidence in *Adobe Land* the plaintiffs already had sued the defendant, and the defendant knew much more about the claims against it than Walgreens knew at the time of the alleged spoliation in today's case. *See id.* The *Adobe Land* case is not on point.

Gregg argues that the First Court of Appeals's opinion in *Clark v. Randalls Food* involved different facts and is not on point regarding the prejudice resulting from the alleged spoliation of evidence. *See* 317 S.W.3d 351, 359–60 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). Because we dispose of the spoliation issues based on Gregg's burden of establishing that Walgreens knew or reasonably should have known that the Deleted Video would be material and relevant to Gregg's claim, we need not and do not address the prejudice issue, which would be relevant to the trial court's remedy if Gregg had proved a spoliation of evidence. *See Brookshire Bros., Ltd.*, 438 S.W.3d at 21–22. In *Clark,* the defendant did not dispute that the plaintiff fell on liquid detergent that had leaked from a broken container and there was evidence that defendant's claims adjuster notified the defendant that if the defendant was not aware of the detergent or if the spilled detergent had not been there a long time before the fall, the defendant would not be liable. *See Clark*, 317 S.W.3d at 354–55. We conclude that the *Clark* opinion is not on point as to our spoliation-of-evidence analysis in today's case.

The dissent argues that Walgreens had a duty to preserve "one to two hours preceding the fall" and failure to do so unfairly prejudiced Gregg. There are several problems with the dissent's argument. First, the dissent does not and cannot explain how the trial court's implicit denial of Gregg's spoliation argument constitutes an abuse of discretion such that it was arbitrary, unreasonable or without reference to any guiding rules or principles. Second, two and a half months

11

after the fall, Gregg's attorney asked Walgreens to preserve "any store surveillance videotape which captured some or all of the incident in question." That is precisely what Walgreens did. Finally, when in the ordinary course of business the Deleted Video was taped over three months after the fall, Walgreens was still under no notice whatsoever that Gregg would contend that she fell because of some unknown liquid on the floor.

- There is no evidence that Gregg told Walgreens at the time of the fall that there was liquid on the floor; and

- Neither the Walgreens store manager nor any other Walgreens employee saw liquid on the floor.

Yet, the dissent argues that somehow Walgreens should have divined that Gregg would later claim water on the floor caused her fall and that Walgreens should have preserved video of the store before the incident in question. The trial court's refusal to grant the spoliation relief Gregg requested cannot possibly be an abuse of discretion.

We overrule Gregg's third and fourth issues.

**C. Did the trial court err in granting summary judgment?**

In her first issue, Gregg asserts that the summary-judgment evidence raises a genuine fact issue as to the existence of a condition on the premises that posed an unreasonable risk of harm. In her live pleading, Gregg alleged that she slipped and fell on a puddle of water on the floor of the Walgreens store and that the water on the floor constituted an unreasonably dangerous condition. On appeal, Walgreens asserts that the summary-judgment evidence Gregg submitted does not raise a genuine fact issue as to whether there was water on the floor, whether Gregg slipped on the water, or whether a condition existed on the premises that posed an unreasonable risk of harm. We presume, without deciding, that the summary-

12

judgment evidence raised a genuine fact issue as to whether Gregg slipped on a puddle of water on the floor in the Walgreens and as to whether this water puddle was a condition on the premises that posed an unreasonable risk of harm.

In Gregg's second issue, Gregg asserts that the summary-judgment evidence raises a genuine fact issue as to whether Walgreens had actual or constructive knowledge of the water on the floor that Gregg claims posed an unreasonable risk of harm. In reviewing a no-evidence summary judgment, we ascertain whether the nonmovant pointed out summary-judgment evidence raising a genuine issue of fact as to the essential elements challenged in the no-evidence motion. *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 206–08 (Tex. 2002). In our de novo review of a trial court's summary judgment, we consider all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). The evidence raises a genuine fact issue if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary-judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007).

When Gregg entered the Walgreens store to make a purchase and fell, she had invitee status. *See Wal-Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 814 (Tex. 2002). Walgreens owed Gregg, its invitee, a duty to exercise reasonable care to protect her from dangerous conditions in the store that were known or reasonably discoverable, but Walgreens was not an insurer of Gregg's safety. *See id*. An essential element of Gregg's claim is that Walgreens had actual or constructive knowledge of the water on the floor. *See id*.; *Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex. 1992).

Gregg may prove this element by establishing that (1) Walgreens placed the water on the floor, (2) Walgreens actually knew that the water was on the floor, or (3) it is more likely than not that the condition existed long enough to give Walgreens a reasonable opportunity to discover it. *See Reece*, 81 S.W.3d at 814; *Keetch*, 845 S.W.2d at 265. On appeal, Gregg does not assert that Walgreens placed the water on the floor, nor is there any summary-judgment evidence that would raise a fact issue on this point. Therefore, to avoid summary judgment, there must be summary-judgment evidence raising a genuine fact issue as to whether (1) Walgreens actually knew that the water was on the floor, or (3) it is more likely than not that water had been on the floor long enough to give Walgreens a reasonable opportunity to discover it.

### 1. Actual Knowledge

Gregg testified that she did not believe that it was raining when she entered the Walgreens store on the day of her fall, but that it had rained earlier and "[i]t had been wet." A photograph in the summary-judgment evidence shows that there was a wet floor warning sign just inside the entrance of the store when Gregg entered the store just before she fell. Calzoncinth agreed that there was a wet floor sign at the entrance but did not recall why the sign was there on that day. Calzoncinth testified that wet floor signs are put up near the entrance to the store if it looks like it is going to rain or if it is raining.

Gregg asserts that Walgreens knew that rainfall elevated the risk of injury to invitees who were shopping in the store and that Walgreens knew that outdoor precipitation could be tracked into the store by customers thereby creating slick and dangerous walkways inside the store. Gregg cites testimony by store manager Calzoncinth that rain can be a hazard. Gregg also relies on Calzoncinth's testimony indicating that the purposes of a wet floor sign are (1) to alert customers to be

14

careful because they might be tracking water in on their shoes or other customers might have tracked water into the store on their shoes, (2) to be careful if it is raining, and (3) to slow down and be careful and alert. According to Gregg, Calzoncinth's testimony shows that Walgreens had full awareness of a correlation between rainy conditions and slip-and-fall hazards in the store. Gregg asserts that she does not have to show Walgreens had actual knowledge of the water on the floor on which she allegedly slipped and that she only has to establish that Walgreens had actual knowledge that the walkways in the store could become slick during inclement weather. That is not what Texas law requires. To show that Walgreens had actual knowledge of the water on the floor posing an unreasonable risk of harm, Gregg had to show that Walgreens actually knew that the water was on the floor; showing that Walgreens knew that water could be on the floor or that there was a risk that water might be on the floor does not suffice. *See City of Dallas v. Thompson*, 210 S.W.3d 601, 603 (Tex. 2006) (stating that actual knowledge required for liability is of the dangerous condition at the time of the accident, not merely of the possibility that a dangerous condition can develop over time); *CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 102 (Tex. 2000) (concluding that evidence that a defendant knew that a unit could become dangerous does not constitute evidence that a defendant knew that the unit had become dangerous).

Gregg testified that she entered the store, turned left, and fell before she got past the second cash register. Photographs in the summary-judgment evidence show that a wet floor sign had been placed to the right and just inside the entrance to the store. Calzoncinth agreed that a wet floor sign had been placed by the entrance. Though a Walgreens employee might have put the wet floor sign by the entrance because it looked like it was going to rain, Gregg asserts that a Walgreens employee may have put the wet floor sign by the entrance earlier in the day when

15

the employee saw that it was raining. Even presuming that the wet floor sign had been placed by the entrance earlier in the day because it was raining, evidence that there was a wet floor sign by the entrance does not raise a genuine fact issue as to whether Walgreens had actual knowledge that water was on the floor inside the store in the area where Gregg fell. *See Burgan v. Kroger Texas, L.P.*, No. 3:15-CV-4081-G, 2016 WL 3595637, at *4 (N.D. Tex. Jul. 5, 2016) (applying Texas law).

Gregg relies on the Supreme Court of Texas's opinion in *City of San Antonio v. Rodriguez*. *See* 931 S.W.2d 535 (Tex. 1996) (per curiam). In *Rodriguez*, the high court reversed the court of appeals's determination that a jury could have concluded that a leaky roof in a city recreation center was itself a dangerous condition. *See id*. at 536–37. The supreme court concluded that the leaky roof was not a dangerous condition, but the leaky roof could cause a dangerous condition, such as water on the basketball court underneath the roof. *See id*. The high court rejected the city's argument that there was no evidence the city knew of the water on the basketball court because: (1) there was evidence that the person in charge of the recreation center knew of the leaks in the roof and knew that it had been raining; and (2) depending on the position of the leaks above the basketball court and the amount of rain, the jury might infer that the person in charge knew that there would be water on the floor. *See id*. at 537. The *Rodriguez* case involved roof leaks and different facts from today's case, and that case is not on point. *See id*. at 536–37; *Coward v. H.E.B., Inc.*, No. 01-13-00773-CV, 2014 WL 3512800, at  *4 (Tex. App.—Houston [1st Dist.] Jul. 15, 2014, no pet.) (distinguishing *Rodriguez* and concluding that store manager's testimony that she knew it was raining, that the store roof had leaked in the past when it rained, and that she was looking for leaks when the plaintiff fell did not raise a fact issue as to whether the defendant had actual knowledge that there was a dangerous condition on the aisle where

plaintiff slipped and fell in a water puddle) (mem. op.).

Gregg also relies on *Duprie v. Dolgencorp of Texas* in support of her argument that the summary-judgment evidence raises a genuine fact issue as to whether Walgreens actually knew that water was on the floor where Gregg fell. *See* 59 S.W.3d 196 (Tex. App.—Beaumont 2000, pet. denied). Such reliance is misplaced. In *Duprie*, the defendant's assistant manager testified that it had been raining heavily on the day in question. *Id.* at 198. At the time of the incident, "it had either stopped raining or was drizzling very lightly." *Id.* Customers had tracked rainwater into the store, and the assistant manager indicated that she had mopped up the water from the tile floor that customers had tracked into the store. *Id.* She further testified she had moved a mat that had been near the front of the store and that a mat outside the store was at the end of the sidewalk, nowhere near the door. *Id.* She said it had not occurred to her that without these mats customers would have no opportunity or ability to dry their feet. *Id.* Based on these facts, the *Duprie* court concluded that "the evidence of the proprietor's notice of a dangerous condition consisted of actual, not constructive notice, because Dollar General's employees were aware that customers entering the store were creating a dangerous condition by tracking in rainwater from outside." *Id.* at 199. The evidence in *Duprie* materially differs from the summary-judgment evidence in this case; *Duprie* is not on point. *See id*. at 198–99; *Hollinger v. Hobby Lobby Stores*, No. 4:16-CV-103, 2017 WL 1093296, at *3–4 (E.D. Tex. 2017) (applying Texas law).

Under the applicable standard of review, we conclude that the summary-judgment evidence does not raise a genuine fact issue as to whether Walgreens had actual knowledge of water on the floor where Gregg fell, which we presume posed an unreasonable risk of harm.[2] *See Hollinger*, 2017 WL 1093296, at *3–4; *Burgan*,

---

[2] As stated above, we do not consider the video submitted by Walgreens in making this

2016 WL 3595637, at *2–6; *Thompson*, 210 S.W.3d at 603; *Daenen*,15 S.W.3d at 102; *Coward*, 2014 WL 3512800, at *4.

## 2. Constructive Knowledge

Gregg also could raise a fact issue on the second challenged element by raising a fact issue as to whether it is more likely than not that the water on the floor existed long enough to give Walgreens a reasonable opportunity to discover it. *See Reece*, 81 S.W.3d at 814; *Keetch*, 845 S.W.2d at 265. The rule requiring proof that a dangerous condition existed for some length of time before a premises owner may be charged with constructive knowledge is firmly rooted in Texas jurisprudence. *See Reece*, 81 S.W.3d at 815. This rule emerged from the reluctance of Texas courts to impose liability on a storekeeper for the carelessness of another over whom the storekeeper had no control or for "the fortuitous act of a single customer" that instantly could create a dangerous condition. *See id*. at 816. This rule is based on the premise that temporal evidence best indicates whether the owner had a reasonable opportunity to discover and remedy a dangerous condition. *See id*. Without some temporal evidence, there is no basis upon which the factfinder reasonably can assess the opportunity the premises owner had to discover the dangerous condition. *See id*. Before liability can be imposed on the premises owner for failing to discover and rectify, or warn of, the dangerous condition, there must be some proof as to how long the hazard existed. *See id*.

Our record contains no summary-judgment evidence as to how long the water was on the floor before Gregg fell. Gregg asserts that her deposition testimony establishes that there were wet conditions due to rainfall earlier in the

determination as to whether the summary-judgment evidence raises a genuine fact issue. We also presume for the sake of argument that the color photographs filed by Gregg were timely filed and are properly considered as part of the summary-judgment evidence.

18

day and suggests that there had been inclement weather for a substantial period of time before she arrived at the store. Gregg testified that it "had been wet." Even presuming that Gregg testified that it had been raining and that there had been inclement weather for a substantial period of time before she arrived at the store, that evidence would not address how long the water was on the floor before Gregg fell. We have no summary-judgment evidence indicating when or how the water came to be on the floor where Gregg fell or how long it remained there before her fall. Likewise, the record contains no summary-judgment evidence of any condition of the water that might indicate how long the water had been on the floor when Gregg fell. None of the summary-judgment evidence raises a genuine fact issue as to how long the water was on the floor. Under the applicable standard of review, we conclude that the summary-judgment evidence does not raise a genuine fact issue as to whether it is more likely than not that the water on the floor existed long enough to give Walgreens a reasonable opportunity to discover it.[3] *See Griggs v. Wal-Mart Stores Texas LLC*, No. 4:16-cv-0178, 2017 WL 4512557, at \*6 (S.D. Tex. Jul. 27, 2017); *Hollinger*, 2017 WL 1093296, at \*4; *Burgan*, 2016 WL 3595637, at \*5; *Reece*, 81 S.W.3d at 814; *Coward*, 2014 WL 3512800, at \*4–7.

Under the applicable standard of review, we conclude the evidence does not raise a genuine issue of fact as to whether (1) Walgreens placed the water on the floor, (2) Walgreens actually knew that the water was on the floor, or (3) it is more likely than not that the water had been on the floor long enough to give Walgreens a reasonable opportunity to discover the water. *See Reece* at 814–17. The summary-judgment evidence does not raise a genuine fact issue as to whether

---

[3] As stated above, we do not consider the video submitted by Walgreens in making this determination as to whether the summary-judgment evidence raises a genuine fact issue. We also presume for the sake of argument that the color photographs filed by Gregg were timely filed and are properly considered as part of the summary-judgment evidence.

Walgreens had actual or constructive knowledge that the water was on the floor—an essential element of the premises-liability theory that Walgreens challenged in its summary-judgment motion. *See id.*; *Martinez v. Fallas Paredes*, No. 14-11-00869-CV, 2012 WL 5336961, at *1–3 (Tex. App.—Houston [14th Dist.] Oct. 30, 2012, no pet.) (mem. op.). Therefore, the trial court did not err in granting a no-evidence summary judgment as to the premises-liability theory. *See Reece*, 81 S.W.3d at 815; *Martinez*, 2012 WL 5336961, at *1–3. Accordingly, we overrule Gregg's second issue, and we need not and do not address Gregg's first issue.

Because Gregg has not shown that the trial court erred in granting summary judgment, we affirm the trial court's judgment.


/s/     Randy Wilson
        Justice

Panel consists of Justices Zimmerer, Poissant, and Wilson (Poissant, J., dissenting).